**Ruby GLOVER (formerly Ruby Andrews) et al., Plaintiffs-Appellees,**

v.

**The UNITED STATES of America, Defendant-Appellant.**

No. 72–3546.

United States Court of Appeals, Fifth Circuit.

Dec. 13, 1973.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., Frank D. McCown, U. S. Atty., Fort Worth, Tex., Eugene G. Sayre, Atty., Tax Div., Dept. of Justice, Dallas, Tex., Michael D. Cropper, Atty., Grant W. Wiprud, Washington, D. C., for defendant-appellant.

Fred A. Sanders, Robert S. Newkirk, Fort Worth, Tex., for plaintiff-appellee.

Before THORNBERRY, SIMPSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

In the light of present precedent, the government concedes it failed to carry its evidentiary burden in this tax case but would have us remand this cause to allow it another chance to supply requisite proof. Finding no change in the law since it defaulted the opportunity to make its case in the trial court, we decline to authorize a second go round.

The ABC transaction which forms the setting for this case, though gone,[1] cannot yet be forgotten. Since the operative facts occurred before Congress sounded the death knell for this once common oil and gas transaction tax device, they must be examined in light of the pre-1969 law. The taxpayers[2]—the B party—acquired oil and gas working interests subject to a production payment. Fort Worth Enterprises, Inc. (Enterprises)—the C party—purchased this production payment with a bank loan which was secured by the payment. Sol Brachman, the father of some of the taxpayers, successively furnished the bank with three takeout letters guaranteeing repayment of substantial portions of the then outstanding loan balance to Enterprises. The guarantee provided that Brachman would be subrogated to the bank's rights against Enterprises should he have to make good on the loan. The question presented on the merits was whether, under pre-1969 law, the holder of the working interest (taxpayers) or the holder of the production payment (Enterprises) had the taxable and depletable economic interest in the income allocable to the production payment. The trial court held for taxpayers, determining that Enterprises possessed sufficient economic substance to have the requisite economic interest in the income.

Our October 8, 1971 decision, Holbrook v. Commissioner of Internal Revenue, 450 F.2d 134, rehearing en banc denied December 20, 1971, 451 F.2d 1350, held that a guaranty of the C party's purchase money debt does not in itself require a finding that the holder of the production payment does not bear the ultimate risk of non-production. Rather, the purchaser of the production interest is deemed to have the taxable and depletable economic interest in the income allocable to the production payment if the guarantor has a right of subrogation against the production interest purchaser and if that subrogation right has financial substance. Our decision in *Holbrook* became final well before the trial court's opinion here was entered, May 15, 1972. Judgments were entered August 2, 1972. In the case at bar it should be noted that the government does not dispute the fact that the guarantor, Brachman, had a right of subrogation against Enterprises for any losses he might incur; rather, it asserts that this case should be remanded to afford it a second opportunity to establish that the right of subrogation lacked economic substance.[3]

1. 26 U.S.C. § 636, added by the Tax Reform Act of 1969.

2. Taxpayers Malcolm Brachman and Marilyn Brachman Hoffman are brother and sister. Taxpayers Milton and Herman Lurie are brothers, and are third cousins of Malcolm Brachman and Marilyn Brachman. The Malcolm Brachman Trust and the Marilyn Brachman Trust were created on July 16, 1936, by and between Sol Brachman and his wife, Etta K. Brachman, Settlors, and Ruby Andrews, Trustee. Sol Brachman and his wife are the parents of Malcolm Brachman and Marilyn Brachman Hoffman. The Marilyn Brachman Trust terminated on January 31, 1962, and its assets were distributed to Marilyn as sole beneficiary.

3. In light of our disposition in this case, we need not decide what may be the effect, if any, of the fact that the debt was guaranteed by Sol Brachman and not by the taxpayers. Similarly, we do not reach the effect which the prospective actual value of the oil payment may have had on the legal issues raised.

The government directs our attention to Producers Supply and Tool Co. v. United States, 465 F.2d 787 (5th Cir. 1972), which was handed down after the instant case was on appeal. *Producers Supply* initially involved the same C party, Enterprises, the same guarantor (Sol Brachman), and virtually identical proof as to Enterprises' assets with respect to closely related taxable years that we have here. However in *Producers Supply*, contrary to the trial result here, the lower court found that Enterprises was a "dummy" corporation lacking in economic substance. This finding was based solely on evidence of the corporation's book value introduced by the Commissioner. On the appeal of *Producers Supply* this court held that such proof of book value, standing alone, was insufficient to carry the government's burden "for it is beyond question that book value simply does not reflect the true value of any business concern."[4] However, because *Holbrook* was reported after the district court judgment in *Producers Supply* was appealed, this court concluded that the government should be given another opportunity to carry its *Holbrook*-announced burden of establishing that the right of subrogation lacked economic substance.

The government argues that just as *Holbrook* justified a further opportunity to make out its case in *Producers Supply*, so *Producers Supply* indicates that the same result should obtain on this appeal. Not so. Far from being the proverbial gray mare, *Producers Supply* is a horse of quite a different color. The trial court proceedings in *Producers Supply* preceded our holdings in *Holbrook*. The government does not here dispute that it knew of this court's decision in *Holbrook* months before the trial court's decision in this case. In spite of being clearly advised that the burden of proof on this issue belonged squarely to it, the government made no attempt to place any additional evidence before the trial court as to Enterprises' financial condition, either by a motion to reopen the case or by a motion for a new trial. Having thus elected to stand on its evidence as to book value even after the trial court found it insufficient, the government's untimely request that it be allowed an additional opportunity to supplement its case comes too late.

The proposition that proof of book value alone is insufficient to establish true corporate fiscal substance certainly did not originate with *Producers Supply*.[5] The choice by the government to let its case stand on less than the best evidence it could adduce in the face of a ruling by the district court that its proof was insufficient, if a mistake, was not a mistake caused by any change in or new pronouncement of law. *Producers Supply* merely affirmed that the trial court in the case at bar was right, not wrong. The government has been accorded its day in court. Just as any private citizen, it is only entitled to one. The decision of the district court is

Affirmed.

---

4. 465 F.2d at 792.

5. Judge Goldberg viewed the matter as one altogether closed.

. . . it is beyond question that book value simply does not reflect the true value of any business concern. *See, e. g.*, A. Robichek & S. Myers, Optimal Financing Decisions 130–131 (1965) ; E. Solomon, Theory of Financial Management 39–45 (1963).
[465 F.2d at 792]